Good morning, your honors, and may it please the court. My name is Drew Tulemelo, and I represent Bruce Matthews. I would like to reserve three minutes for rebuttal. Okay. Watch your clock. Thank you, your honor. Bruce Matthews is a Hall of Fame NFL football player who has suffered injuries to his head, neck, back, spine, upper and lower extremities, his joints, and his jaw, playing professional football over the course of his professional career, including in California. The California Labor Code expressly permits workers like Mr. Matthews to recover benefits for these cumulative injuries. The district court's decision here prevents Mr. Matthews from even trying to obtain workers' compensation benefits under California law. The district court did so based on its view that California does not have a strong public policy against waiving workers' compensation benefits. That decision is fundamentally wrong. The district court's decision contradicts the express statutory provisions of California's Labor Code, sections 5000 and 2804, and the holding in two Supreme Court cases of California and the U.S. Supreme Court, which hold that California's anti-waiver provisions invalidate a choice of law clause, that's Alaska Packers, and that California's anti-waiver provisions also override an employee's consent to be bound by another state's law, even where that other state's law expressly says it provides the exclusive remedy for out-of-state injuries. That is specific employers. California's anti-waiver policy is therefore dominant and clear. It is set forth in positive statutory law, ratified in two decisions of the Supreme Court of California and the Supreme Court of the United States. For these reasons, the district court's decision should be reversed. Now, the district court believed that California's public policy was murky because Mr. Matthews did not form an employment relationship in California. But the anti-waiver policy clearly applies if you are injured in California. The Supreme Court's decision in Pacific Employers is squarely on point. What's the evidence of his injuries in California? He has played professional football in California over the course of his career. What we have at this point in the record is his application to the Workers' Compensation Board setting forth the injuries that he sustained. He was then enjoined, in effect, by the Arbitration Award from going forward with the additional medical evidence. Pacific Employers, as a legal matter, makes clear that an employee, in that case a Massachusetts employee, working for a Massachusetts employer who consented to be bound by Massachusetts law, and where Massachusetts law itself said, Massachusetts workers' compensation law provides the exclusive remedy for out-of-state injuries, that employee went to California, suffered an injury. And the Supreme Court of California and of the United States held unanimously that California's anti-waiver provisions overrode the employee's consent, Massachusetts' own statutory exclusivity provision, putting Alaska Packers together with Pacific Employers. Can I come back to the question I asked? You gave me a partial answer. Are you referring to ER 152 as its application? Excerpts of record 98 and 149, I believe, Your Honor. I have a petition. I have it as Exhibit B, page 36. Is that different from what you're referring to? I think we might be. Describe the injury and so on and so forth. Your Honor, I would direct the Court's attention to the excerpts of record 149. I think that's the application for workers' compensation benefits that sets out the injuries that Mr. Matthews sustains. Okay. I'm not sure I have it. What I have is describe the injury. It says head, neck, back, spine, upper and lower extremities, all joints, internal and external, jaw, Correct. Correct, Your Honor. Okay, and that's no different on the document that you're referring to? Correct. Where did those injuries occur? Well, he is alleging, Your Honor, that he sustained those injuries in California. Every one of these? Yes, Your Honor, that he sustained cumulative injury in California. And, indeed, the legal issue here does not turn on the extent of the injury. Under the NFL's position, if Mr. Matthews had suffered a paralyzing injury on the field in San Diego or had been crippled. I understand that. I'm looking at California's policy. You're relying on the Pacific employers. It was a pretty distinct injury. There's no dispute. What he was claiming was the injury that did occur in California. There's some question as to whether a transitory, someone passing through and there's no distinct injury that can be identified would invoke that clear statement of policy. That's what I'm driving at. Okay, and I understand, Your Honor. Two responses. First, California has legislatively enacted a regime in which it addresses both specific injuries of the type you're referring to in Pacific employers and cumulative injuries. Second, I think to decide. What's the cumulative injury? The cumulative injury is set forth in Section 3208.1 of the California Labor Code. So it is California's statutory policy to recognize these types of injuries. Second, at this stage, the legal question is whether the choice of law clause prevents Mr. Matthews from even making the application. I don't think the court wants to put an evaluation of the merits of the injury. No, I'm looking for a clarification of the policy. You're saying there's a clear, unambiguous policy that California would want to have a worker who is not employed in California, employed elsewhere, contract made elsewhere, but someone who played at various times and did not have a distinct, you know, earth-shaking head, you know, carried off the field. We don't know how. And I'm not being unsympathetic to Mr. Matthews in the slightest. But if it's a cumulative injury, then basically he could lay claim, I suppose, to any state where the Titans played over the course of his career and say, well, I was injured in your state because I played a game there. Two responses again, Your Honor. The California's public policy prohibiting waivers of workers' compensation rights is unambiguous. It draws no distinction between specific injuries and cumulative injuries. Section 5000, Section 2804 prohibit any waivers. In terms of the policy about what injuries to compensate, the California Labor Code is also express. It recognizes both the specific injury and the cumulative injury. And you cannot, I do not think you can read an exception into Section 5000 of the Labor Code or Section 2804 of the Labor Code to say that the anti-waiver language applies to specific injuries, but in injuries where there may be, where there's cumulative injury or where maybe we think the injury is a little bit more attenuated to California, that the waiver language does not apply. The language of the Labor Code is express and clear. On Your Honor's point that, you know, he played some games in California but other games elsewhere, there's no surprise I think for the Titans that Mr. Matthews would be eligible to seek workers' compensation in a state where his employer knowingly and regularly sends him to work. The NFL in this respect is no different than trucking or other interstate businesses that frequently send their employees into other states. You cannot by private contract displace state health and safety laws. In fact, in this court's en banc decision in Kramer versus Consolidated Freight Industries, this court held en banc that a Washington trucker who had come into California and had been exposed to two-way mirrors in California that the trucking company had set up. I'm familiar with the case. Okay. That was a per se violation of a California state statute. The court's ruling in that case was even if the parties had agreed otherwise through the collective bargaining agreement, California could still apply its law. That was a pretty clear policy. I happen to write the en banc decision, so I think I know what the case is about. And I didn't see the parallels until you raised them today. But I'll go back and take another look. I don't want you to use up all your time on, you know, trying to overrun my question. You've answered the question, and I'm not demeaning your answer in any way. I'd like to just make sure we all get a chance to ask questions on issues. One of the ones I'd like you to address, if you could, is Section 3600.5. Yes. How does that play into all of this? I think that refutes the parade of horrible arguments that you are likely going to hear from the other side and that you've heard in the briefs, which is, oh, my goodness, anyone anywhere who's played in the NFL can come to California. That statute provides a reciprocity and insurance scheme that exempts out-of-state employers from immunity under California workers' compensation law under two conditions. One, that the out-of-state employer carries insurance for employees who work out-of-state. And two, that the out-of-state employer's home state provides a reciprocal, reciprocal exemption for California employers that carry insurance for their employees that go out-of-state. Does that apply here? I don't know if the other side is going to argue in the workers' compensation proceeding whether the reciprocity and insurance statute exempts them. I know that they've cited supplemental authority, to your honors, where another NFL team succeeded in doing so. And what it demonstrates is that there are defenses that out-of-state employers can raise as a matter of statute to claims by players in Mr. Massey's situation. But they don't want to get, they don't want, they don't want the legal principle to be that we get to that stage. They want the legal principle to be that the NFL can, through a choice of law provision, confine an employee who is injured in another state, whether it's specific or cumulative, from seeking benefits anywhere else. And that, I would urge the court, would work a fundamental reworking of workers' compensation law. Workers' compensation is not a matter of private contract. If you take out the choice of law clause here, and you look at the Supreme Court's decision in Thomas v. Washington Gaslight Company, in Carroll v. Lonza, the rule is clear that an injured employee can always seek compensation in the state in which he is injured. That is the rule. The leading treatise on workers' compensation, which is Larson Workers' Compensation, says practically every state has an anti-waiver clause, and that an express agreement between an employer and an employee that the statute of a named state shall apply is ineffective to diminish the applicability of the statutes of other states. So it is literally hornbook law that a choice of law clause cannot defeat a state's interest in providing compensation, particularly in California, where the anti-waiver policy is expressed and clear. I'd like to reserve the balance of my time for rebuttal. Thank you. Good morning. My name is Rex Heinke, and here with my partners, Dan Nash and Rachel Lerman, we represent the NFL, the Tennessee Titans. I want to say that we fundamentally disagree with Mr. Matthews' position that there is a clear, dominant, and explicit policy here that is being violated by the choice of law provisions. Mr. Matthews takes the position that the California statute is clear because it has a no-waiver provision in it. But what it doesn't have is a prohibition on choice of law provisions. Well, that's exactly what was decided by the California Supreme Court and the United States Supreme Court, that a choice of law is a waiver. And it's so that you distort those leading cases when you take that position. Your Honor, I don't believe we distort them. Well, you explained in the Alaska package, those are choice of law. Both courts said that's a waiver. In the context of the facts of those. Well, how are these facts different? Well, these facts are very different. What? These facts are very different. Oh. May I make one point before I answer that? It's this. If the issue was as simple as Mr. Matthews says, which is there's a California statute. It says no waiver. Therefore, we win. That is, Matthews wins. Then why didn't the California Supreme Court say that? It didn't say that. What it did was analyze the facts of the situation in Alaska Packers. And what were those facts? The plaintiff was a Mexican immigrant. He was resident in California at the time he signed the contract in question with the employer. The contract provided that it would use Alaska law. There was a choice of law provision. And it provided that the employer would transport him to Alaska where he'd work in the fishing industry. That it would transport him back to California where it would pay him his wages. When he returned to California, he claimed he had been hurt in Alaska. And that's a very familiar recital. Right. So what did the California Supreme Court do? First, it went through all those facts. If Mr. Matthews' position was correct, it wouldn't have to go through those facts at all. All it would have to say is we have a no waiver provision. Well, they were setting a precedent. I mean, you're up against a hard place. Well, Your Honor, I don't think so because it's a very different situation. If you read Alaska Packers, what it comes out with a rule. We look at the rule. A rule based on those facts. It does not come out with the rule that Mr. Matthews wants. Most rules begin with facts. Certainly. But it doesn't come out with the rule. Well, you've got a tough slide. Your Honor, it doesn't come out with the facts that Mr. Matthews wants, which is absolute rule, nothing to analyze. Well, that's the way it may be. And if you look at the U.S. Supreme Court's decision, it does the same thing. It goes through the facts and says that on these facts, we find there's no constitutional violation. So that it says, and I quote, that it's unnecessary to consider what effect should be given to the California statute, unquote, when California had a lesser interest in the case. That is, all it decided was on these facts, California. It's only been a precedent for, what, 75 years? Sure, but it's a question of precedent as to what. What is it a precedent for? It is not a precedent for the absolute rule that Mr. Matthews wants. And without an absolute rule that he wants, there is no explicit, well-defined, dominant policy here that the arbitrator is supposed to have violated. You don't believe in the California statutes being public-public? Oh, I believe they're public policy. The question is, what is the policy they uphold here? And that policy, if California wanted to have a policy that said, we prohibit choice of law provisions, it could have put that in the legislation. But California, and if you look at the California legislature, when it wants that, it says that. So, for example, in the case in our briefs, the 1-800-JUNK-FACTS case involving the California Franchise Act, the argument was made that a no-waiver provision there that applied to franchise agreements prohibited choice of law provision. The court did not agree. It said the legislature could have expressly prohibited this. It did not expressly prohibit this. So the no-waiver clause is not an absolute ban. It looked, because there was no law under the Franchise Act, to the California, other California law involving the corporate code, and said similarly there, the cases in California have held that a no-waiver provision by itself is not an absolute ban on choice of law provisions. All that it does is put into controversy these issues, but if California wants to say, I, we, the State of California banned this, it may, but it didn't do it. So there's no clear, explicit provision. If you go and look at Alaska Packers and look at the rationale, the rationale in the case for saying, yes, we're going to apply California law and not Alaska law, is that the plaintiff there would be a burden on California because he would be back in California because the employer transferred him back. He had a pretty thin connection with California temporarily in the state. But he signed the contract in the state. That was a big event. And he was returned to the state, and what the California Supreme Court said was he's not in a position to get back to Alaska. His co-employees are not in a position to get back to Alaska because they don't have the economic resources, and without providing him California workers' comp benefits, he simply won't have any workers' comp benefits. He will become a charge on California, and that's the public policy that the California Supreme Court and the U.S. Supreme Court enforced. But they adopted no, no rule that says that there is an absolute waiver, an absolute ban in California on choice of law. In addition, if one looks to California law and the Nedloyd case decided by the California Supreme Court, the California Supreme Court was very clear there that it favors choice of law provisions and that California recognizes choice of law provisions. So what is the California policy here? One, it has no explicit ban on choice of law provisions. And second, the California Supreme Court has said and the California Courts of Appeal have repeatedly said that you can have a choice of law provision in a contract. Can that provision be overridden? Certainly in some circumstances. When are those provisions enforceable? Well, the California Supreme Court created a two-part test. The first part is, is there any substantial relationship between the parties and the law that they picked? Well, here there plainly is. The law that was picked was Tennessee, where the Tennessee Titans were, where the contract was executed, where it was negotiated, where Mr. Matthews was playing most of the time. So there's no issue as to whether there's a substantial relationship. The California Supreme Court said, well, there's another way you can overturn a choice of law provision. And it has two parts. One, you have to show that there's a fundamental California policy that is being violated. We submit that there's no such fundamental policy being violated here because there is no law that says you can't do this. There's no ban on choice of law provisions. The second part of that test is, even if California has prohibited this, does California or Tennessee have the greatest interest in the case? Who has the greatest interest here? The Titans are in Tennessee. The contract's entered into and negotiated in Tennessee. The majority of the games were in Tennessee. Mr. Matthews does not allege nor offer any evidence that he ever resided in California while he was playing for the Titans or that he sustained any specific injury here. In fact, all he said in his petition was that the Titans had played two games in California, and that was after he left. Now, as we noted in our brief, the Titans played, while he was there, about 4% of their games in California. Who has the greater interest? Tennessee, under those circumstances we submit, it's clear. It has far more overwhelming contacts. What if he had been injured in California in the game and he had to be treated? In other words, he got one of those catastrophic injuries playing against the New Orleans Saints, perhaps. Although why they'd be in California, I don't know. But I don't want to pick on our teams, maybe the Raiders. But in any event, and quite seriously, let's suppose that it had been a very catastrophic accident that led to his being hospitalized for six months while he was in a deep coma. Would that change the calculus? Yes. I think he would be able to claim benefits under workers' compensation in California. But the difference here is this. What he's trying to claim is that for those 96% of the games that were not played in California, he's entitled to come to California, with which he has no connection, and recover benefits for those games. He hasn't said, he's never taken the position that I want to recover for the 4% of the games. What he says is I want to recover for 100% of the games, even though 96% of them were played somewhere else. That's going to be, are you suggesting that wherever he brings it, what percentage of games happened in Tennessee? Over half. So you're saying 50% of his recovery will be, and the rest will be reduced as non-recoverable? A variety of other states. No, what we're saying is he has no substantial connection here when there's no specific injury here. What he's trying to do is use the California tail to wag the national dog. He wants to recover for what he claims are these cumulative injuries throughout the country, even though he has the most tangential connection to California. And we submit that that's not what the rule should be. If you apply the choice of law rules that the California Supreme Court recognized, in Ned Lloyd, the result should be Tennessee law. But you're saying apply the choice of law. That assumes that there's going to be any choice of law. It does. Balancing. Are you suggesting under Tennessee law he could make an argument that California law should apply? Or if he comes to California, let's suppose the case goes forward, can he make an argument, can you make an argument under California law such as you're making, such that at the end of the day the California court, whoever is hearing the case, would apply Tennessee law? Well, we would certainly make that argument. I don't have any ability to predict what would happen. But what I would point to is the 28J letter that we sent to the court this week, I don't know if the court's had an opportunity to review that, involving the Booker case. But I don't know what you draw from Booker. Well, I think what we. You had a contrary ruling from another. No, it's the same. Which went the other way. I believe it's, I think it's the same case. I don't think so. All right. In any event, what we draw from Booker is this, that there the issue was whether a choice of forum provision was enforceable. And the same argument was made that it was unenforceable because of the California statute that contains the no waiver provision. And the Workers' Compensation Board said, no, that's not true. The no waiver provision doesn't apply. In fact, we will enforce the choice of law provision. So I believe even if you're correct, Your Honor, and there's a split in the Workers' Compensation Appeal Board's decisions. There's Booker, which is May 12th, I mean May 2012. Right. And there's Injured Workers Insurance Fund, which was in June 2001. That found a California compensation law covered nonresident professional football player who played only one game in California but who alleged a specific injury during that game. Yes, Your Honor, but let's assume that's rightly decided. It actually doesn't do any analysis of the choice of law issues here. But assume, for the sake of arguments, rightly decided. Does Booker do a choice of law? I'm sorry, not choice of law, only choice of forum. Yes. But the same argument was made. You can't have a choice of forum because of the no waiver provision, and the Workers' Compensation Board said that's not true. There's no reason that that ruling wouldn't apply to a choice of law provision. But let me make the additional point that even if there is a split in the decisions by the Workers' Compensation Appeal Boards, that demonstrates that we prevail. Because to show a violation of a public policy, the policy has to be explicit, it has to be dominant, and it has to be clear. All that would show is California law disagrees, and therefore there is no dominant, clear, express public policy that would justify overturning the arbitrator's decision. Thank you. Thank you. Thank you, Your Honors. I think counsel for the NFL made a very significant concession in the argument, which is that if there had been a traumatic and specific injury, that the anti-waiver rules would kick in and the choice of law clause would not preclude the player from seeking California benefits. If that is true, and it is true, then we win this case. The labor code anti-waiver provisions are express. No contract can exempt an employer from liability under California's workers' compensation scheme. California section labor code 32.008.1 authorizes recoveries for both the specific injuries he says you can, Mr. Matthews can come and get here, and for the cumulative injuries that he's trying to get in this case. Second, a choice of law clause can be a waiver under section 5000. We have that specific holding as a matter of California law in Alaska hackers. I would turn it the other way. If the employee in that case who had signed an agreement that says, I agree to be bound by Alaska law, and Alaska law shall be my exclusive remedy, that was the choice of law clause. If that was not a waiver, how could the court apply the identical predecessor statute to section 5000? Just to be clear, I mean, it's an old precedent, I agree, but written from the Supreme Court, California therefore had a legitimate public interest in controlling and regulating this employer-employee relationship in such fashion as to impose a liability on the employer for an injury suffered by the employee and in providing a remedy available to him in California. In the special circumstances disclosed, the state had as great an interest in affording adequate protection to this class of its population as to employees injured within the state. It then goes on to say it is unnecessary to consider what effect should be given to the California statute if the parties were domiciled in Alaska or were their relationship to California such as to give it a lesser interest in protecting the employee by securing for him an adequate and readily available remedy. So it's a qualified opinion by its own terms, is it not? Your Honor, I would respectfully disagree with you on the conclusion of whether a choice of law clause operates as a waiver, but even if Your Honor had some doubts as to that effect, they should be put to rest by Pacific employers where the employee there in Massachusetts consented to be bound by Massachusetts law or Massachusetts law made its statute exclusive for injuries that occurred out of state and nonetheless California policy overrode the employee's election to be bound by another state's law. And furthermore, even if you disagreed with that, the NFL's position is you should follow the rationale of 1-800-GOT-JUNK. If you read the 1-800-GOT-JUNK case, it stands for the proposition that a choice of law clause will be enforced only where the state chosen by the parties provides greater substantive protections than the home state law. I mean, that is the square holding. And in this case, which is why the NFL is here, there's been no argument or no showing that Tennessee provides more generous benefits or protections than California law. Your Honor, it also makes... You're over time. With one... Finish that sentence. Okay. Made the point that Crosby is still on the books. That's exactly right, Your Honor. Booker does not abrogate Crosby, which is still good law and which provided compensation, notwithstanding a choice of law provision in an NFL player contract. Thank you. Thank you. Thank you, counsel. It's an interesting case. And it is submitted, and we will now be in recess. Thank you. This court for this session stands adjourned.
judges: Gritzner, Noonan, Fisher